UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD CRAIG KESSACK,<br><br>                      Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>                      Respondent. | No.  C05-1828Z<br><br>ORDER |

This matter comes before the Court on a Petition for Writ of Error *Audita Querela* and Petitioner's request that counsel be appointed. The matter was referred to the Honorable Monica J. Benton, United States Magistrate Judge, who issued a Report and Recommendation, docket no. 10, recommending the Petitioner's Petition be DENIED. The Court DECLINES to adopt the Report and Recommendation, GRANTS the Motion to Appoint Counsel, docket no. 4, and DEFERS a ruling on the Petition for a Writ of *Audita Querela*.

**BACKGROUND**

Petitioner is in federal prison serving a 30-year sentence for conspiracy to distribute cocaine. Petitioner was convicted in 1990, after a jury trial, of multiple drug counts. This Court found, by a preponderance of the evidence, that over 40 kilograms of cocaine was

ORDER  1–

involved in the conspiracy resulting in a base offense level of 36; and the Court also found that Kessack was a leader of a criminal activity involving five or more participants resulting in a 4 level increase in the Guideline calculation for his leadership role.  Kessack's criminal history was a Level II and the Guideline range was 324-405 months.  There was a statutory mandatory minimum of 20 years due to a prior felony drug conviction.  The Court sentenced the defendant under the then mandatory Guidelines to 30 years in prison.

At the time the sentencing was imposed, the Court was narrowly restricted in exercising its discretion by then existing mandatory federal Sentencing Guidelines.  Without the Court's findings of drug amounts and leadership, the Court would have imposed a substantially lower sentence, but in no event less than the statutory minimum 20 years.  However, the Guidelines were mandatory and the Court was required, by a preponderance of the evidence, to find the amount of drugs and other sentence enhancements.

Now, the same Guidelines followed in the 1990 sentencing of this Petitioner have been declared unconstitutional.  United States v. Booker, 543 U.S. 200 (2005).  It follows that sentences imposed under an unconstitutional sentencing scheme should, in fairness, be reconsidered.  Yet, due to the rules of retroactivity and the limitation on successive challenges to his conviction, the Report and Recommendation recommends that the pending Petition for a Writ of *Audita Querela* be denied.

After sentencing in 1990, the Petitioner appealed his conviction and sentence to the Ninth Circuit.  Both the conviction and sentence were affirmed.

After his appeal was denied by the Ninth Circuit, he filed a motion to challenge his conviction under 28 U.S.C. § 2255 (2000), which was also denied.  Petitioner has applied for permission to file a successive § 2255 motion, and that too has been denied.  Petitioner now seeks to raise an objection to his sentence in the form of a Writ of Error *Audita Querela*, docket no. 1.  The Petition has not been served on the Government.

ORDER  2–

**ANALYSIS**

For Petitioner to prevail on his Writ, many legal hurdles must be overcome. The first is that Petitioner must fit into the narrow exception by which the Writ of *Audita Querela* is available to federal prisoners. This is the only issue addressed by the Magistrate Judge, who concluded that the Writ of *Audita Querela* is not available to Kessack. R&R, docket no. 10 at 4. Second, Petitioner's sentence must fit within the holding of United States v. Booker, 543 U.S. 220 (2005), holding that the Federal Sentencing Guidelines, as written, violated the constitutional rights of those sentenced. Next, Booker must be found to be retroactively available to previously convicted federal prisoners. Petitioner must also overcome the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") which prevents the filing of second or successive motions under § 2255. Finally, Petitioner must establish that he is entitled to relief under all the circumstances.

*Audita querela* is a form of petition rooted in common law, specifically available to judgment debtors whose judgment was correct when issued, but later rendered incorrect. R&R, docket no. 10. *Audita querela* has since been replaced as a remedy almost entirely by the Federal Rules of Civil Procedure, but is still available to the extent that such a writ "fill[s] 'gaps' in the current systems of postconviction relief." United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001). In United States v. Morgan, 346 U.S. 502 (1954), the Supreme Court affirmed the use of common law writs such as *Coram Nobis* in criminal cases. Subsequent to Morgan, the Ninth Circuit recognized the significance of Morgan to Writs of *Audita Querela*. See Doe v. INS, 120 F.3d 200, 203 n.4 (9th Cir. 1997) (difference between writs is one of timing not substance). As the Doe Court explained: "The teaching of Morgan is that "federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law" Doe, 120 F.3d at 203 n.4 (citing United States v. Ayala, 894 F.2d 425, 428 (D.C. Cir. 1990)). However, the Doe Court concluded that a Writ of *Audita Querela* could only survive if a

defendant has a legal defense or discharge to the underlying judgment. Id. at 203-204. It may not be used on "solely equitable grounds." Id. at 205. It follows that the Writ of *Audita Querela* may be available to remedy an injustice in criminal cases when no other remedy is available if petitioner can demonstrate a legal defense to his sentence.

As there may be no other remedy available to Petitioner in this case, the Petitioner's Writ should be heard and decided on the merits. This is an evolving and complex area of the law. Petitioner and the Courts will benefit from the appointment of legal counsel.

In Booker, the Supreme Court considered the constitutionality of mandatory federal sentencing guidelines, and found them to be an unconstitutional violation of the Sixth Amendment. The sentencing guidelines, as written, required federal judges, after obtaining a guilty verdict from a jury, to make a factual determination of whether aggravating factors were present in the commission of the crime. Booker, 543 U.S. at 236. If the judge found such factors to be present by a preponderance of the evidence, the judge was then required to increase the sentence of the defendant according to mandatory guideline ranges. Id. Thus, after making factual findings under the lower preponderance standard, a judge was sometimes forced to grant a much higher sentence than required by the jury verdict. For example, Booker was convicted by a jury of possessing at least 50 grams of crack cocaine, a crime carrying a maximum sentence of 210-262 months under the guidelines. Id. at 235. The trial judge then found, by a preponderance of the evidence, that the defendant actually possessed an additional 566 grams of crack, a finding that increased the maximum sentence by almost ten years. Id. Consistent with prior decisions, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 231 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

Kessack's case is factually similar to Booker. Kessack was found guilty by a jury of possession of five kilograms of cocaine, a crime carrying a Guideline sentence of 135-168

ORDER  4–

months. This Court then added enhancements, finding by a preponderance of the evidence that Kessack had possessed 15-50 kilograms of cocaine and that he was a leader/organizer. This led to an actual sentence of 360 months, more than twice the Guideline range allowed by the jury verdict alone. Writ, docket no. 1 at 12.[1] Thus Kessack falls squarely within the new rule of law created by Booker.

Petitioner urges the Court to retroactively apply the findings of Booker to his case. The Ninth Circuit has specifically stated that Booker does not apply retroactively in United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005). However, a recent Wisconsin Law Review article advances the argument that Booker, though addressed specifically to the question of whether mandatory sentencing guidelines violated the Sixth Amendment, necessarily implicated the Fifth Amendment as well. Nicholas J. Eichenseer, Comment, Reasonable Doubt in the Rear-View Mirror: The Case for Blakely-Booker Retroactivity in the Federal System, 2005 Wis. L. Rev. 1137 (2005). While Cruz declared that Booker is not retroactive as to a Sixth Amendment claim, Cruz does not preclude any court from considering whether Booker is retroactive as to the Fifth Amendment.

In his comment, Eichenseer states that this Fifth Amendment concern has a significant substantive component, while the Sixth Amendment concern was entirely procedural, and that this difference requires a different retroactivity analysis under Teague v. Lane, 489 U.S. 288 (1989). Id. at 1163. The Booker Court was asked to answer the specific question of "whether the Sixth Amendment was violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant." Booker, 543 U.S. at 229 n.1. The Court answered in the affirmative, concentrating its analysis on the Sixth Amendment, as that was the question before it.

---

[1] The Petitioner was subject to a statutory minimum of 20 years as a result of his conviction.

ORDER 5–

However, as one of the dissenting opinions noted, the decision may implicate Fifth Amendment Due Process concerns as well:

> The commentary to § 6A1.3 states that '[t]he Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.' The Court's holding today corrects this mistaken belief. The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.

Id. at 319 n.6 (Thomas, J. dissenting).

The fact that the Fifth Amendment may be implicated in the decision is important because of the method used to determine retroactivity. In Teague v. Lane, 489 U.S. 288 (1989), the Supreme Court declared that a new rule of constitutional law applies to convictions that have already become final only if the new rule is substantive rather than procedural or the new rule is a "watershed" rule implicating fundamental questions of fairness. Cruz, 423 F.3d at 1120. To date, the Supreme Court has never found such a "watershed" rule. Eichenseer at 1157-58. However, if a rule is substantive, then it may be retroactive.

There is some support within Booker that the new rule was intended to be substantive in nature and not procedural. As the majority states, the Court was "not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." Booker, 543 U.S. at 237. Eichenseer argues that Booker created substantive changes in the law by finding that the mandatory sentence enhancements had effectively been elements of the crime. Eichenseer at 1169-72. In 2004, the Supreme Court said that "new substantive rules are those that 'modif[y] the elements of an offense' because '[n]ew elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful or vice versa.'" Eichenseer at 1169 (quoting Schriro v. Summerlin, 542 U.S. 348, 354 (2004)). Furthermore, Booker implicitly recognizes a risk that prisoners sentenced under the guidelines may in fact be assessed aggravating factors under a preponderance standard which

ORDER  6–

would not be imposed under a beyond reasonable doubt standard. "[R]ules that modify the elements of a crime are applied retroactively because holding otherwise 'carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal.'" Eichenseer at 1172-73 (quoting Schriro, 542 U.S. at 352).

The Ninth Circuit has not evaluated the retroactivity of Booker under the Fifth Amendment. In holding that the Booker rule was not a new substantive rule, the Ninth Circuit in Cruz addressed the procedural aspect of the rule, which allocates decisionmaking power to juries, rather than judges, without addressing the substantive changes inherent in raising the standard of proof by which those decisions are made.

The Ninth Circuit holds that under Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir. 2005), Booker, like Blakely, is not a substantive rule, nor a "watershed" procedural rule. Cruz, 423 F.3d at 1120 (quoting Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005)). In Schardt, the Ninth Circuit held that the Blakely rule allocating decision-making power previously held by judges to juries is procedural because the Supreme Court has instructed that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules. . . ." Id. (quoting Schriro, 124 S.Ct. at 2523). However, Schardt and Schriro both address the procedural question of changing the identity of the decisionmaker, not the substantive question of what standard should be used to make the decision.[2] Consequently, neither the Supreme Court in Schriro nor the Ninth Circuit in Schardt and Cruz considers the implications of Blakely under a Fifth Amendment lens.

Another Ninth Circuit case, United States v. Ameline, 409 F.3d 1073 (2005), also discusses the substantive changes caused by Blakely and Booker. In Ameline, the court considered what relief could be granted to a defendant who had not raised a Sixth

---

[2] In Schriro, the Supreme Court held that Ring v. Arizona, 536 U.S. 584 (2002), a case that transferred decisionmaking power from judge to jury, was procedural, rather than substantive. However, the standard of proof was not implicated, because the judge was required to find facts beyond a reasonable doubt prior to Ring.

ORDER 7–

Amendment challenge prior to sentencing.[3] Id. at 1074. The Ninth Circuit in Ameline held that when "an unpreserved Booker error . . . may have affected a defendant's substantial rights, and the record is insufficiently clear to conduct a complete plain error analysis, a limited remand to the district court is appropriate for the purpose of ascertaining whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory." Id. at 1074. See also id. at 1102-03 (Gould, Circuit Judge, concurring in part and dissenting in part) ("Ameline's substantial rights were affected because extra-verdict facts were used to enhance his sentence under Guidelines thought to be mandatory"); id. at 1112 (Bea, Circuit Judge, concurring in part and dissenting in part) ("the substantive law of what a court can consider at sentencing has changed since the pre-Booker sentencing hearings").

Petitioner received a sentence of 30 years by the Court under the Federal Sentencing Guidelines that were at the time believed to be constitutional. These Guidelines have now been declared unconstitutional. In the interests of justice and due to the extraordinary circumstances presented in this case, Petitioner is entitled to have counsel appointed to assist Petitioner in addressing the issues raised by Petitioner's Writ. These issues include, without limitation, the following:

(1)   The availability of the Writ of *Audita Querela* given the facts of this case;

(2)   Whether the Writ should be considered a challenge to the conviction or sentence under 28 U.S.C. § 2255;

(3)   Whether the Petition must be denied as a second or successive motion under 28 U.S.C. § 2255. See Kessack v. United States, No. 01-70057 (Order entered February 24, 2001); Kessack v. United States, No. 05-71909 (Order entered June 24, 2005).

---

[3] Although Ameline involved a direct appeal, and is therefore not binding on this Court in determining whether Kessack's collateral attack should be granted, the Court finds Ameline instructive in considering the possibility that Booker may create a substantive rule under the Fifth Amendment for purposes of this Order to Appoint Counsel.

ORDER  8−

  (4) Whether Petitioner is foreclosed from attempting to retroactively apply Booker to his case in light of United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005);

  (5) Whether Petitioner has a substantive Fifth Amendment right to challenge his sentence and whether any such right would be retroactive; and

  (6) Whether Petitioner is entitled to be re-sentenced under 18 U.S.C. § 3582(e)(2).[4]

  The Court directs the Clerk to appoint counsel for Petitioner. Unless a conflict now exists, Petitioner's trial counsel Zenon Olbertz should be appointed if possible.

  The Court orders Petitioner's Writ to be served on the Government. The Court re-notes the Writ for December 15, 2006 to allow counsel to fully brief the issues presented. As soon as counsel is formally appointed, the parties should confer on a briefing schedule to address the issues presented.

  The Clerk is directed to send a copy of this Order to the Petitioner, to United States Magistrate Judge Monica Benton, to Zenon Olbertz, Petitioner's trial counsel, and to Helen J. Brunner, Assistant United States Attorney.

  IT IS SO ORDERED.

  DATED this 1st day of November, 2006.

                /s/ Thomas S. Zilly
                Thomas S. Zilly
                United States District Judge

---

[4] This issue has been raised in a similar case, United States v. Carrington, Ninth Circuit No. 05-36143, also arising out of this District as a result of a sentence under the Sentencing Guidelines. Although oral argument has been concluded, no decision has been rendered by the Ninth Circuit.

ORDER 9–