UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD CRAIG KESSACK,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>　　　　　　　　　Respondent. | No. C05-1828Z<br><br>ORDER |

This matter comes before the Court on Donald Craig Kessack's Petition for Writ of *Audita Querela*, docket no. 1. Having carefully considered the briefs in support of and in opposition to the Petition, and the entire record concerning Mr. Kessack's criminal trial, sentencing, and appeals, the Court GRANTS the Petition for Writ of *Audita Querela*, docket no. 1, and ORDERS that Mr. Kessack be re-sentenced on **March 3, 2008, at 1:30 p.m**.

## BACKGROUND

Petitioner Donald Craig Kessack and six others were convicted in 1990, after a jury trial, of multiple counts, including conspiracy to distribute cocaine, money laundering, and possession and distribution of cocaine. Mr. Kessack, who has been in custody since September 10, 1989, is serving a 30-year (i.e., 360-month) sentence in federal prison. Although one of Mr. Kessack's co-defendants, Richard Petty, was also originally sentenced to 30 years, Mr. Petty was re-sentenced twice, at first to 210 months, and later to 121

ORDER   1–

months, as a result of his appeals.[1]  After all appeals, Mr. Kessack's other co-defendants received sentences of 120 or fewer months.[2]  Mr. Kessack is therefore the only individual who remains in prison, and Mr. Kessack is serving a sentence of at least 20 years greater than any of his co-defendants.[3]

In sentencing Mr. Kessack under the then-mandatory Federal Sentencing Guidelines, this Court found, by a preponderance of the evidence, that between 15 and 50 kilograms of cocaine were involved in the conspiracy, resulting in a base offense level of 34; that a firearm was possessed in the conspiracy, resulting in a 2-level increase in the Guidelines calculation; and that Mr. Kessack was a leader of a criminal activity involving five or more participants, resulting in a 4-level increase in the Guidelines calculation.  The Court found Mr. Kessack's total offense level to be 40.  With a criminal history category of Level II, the Guidelines range was 324-405 months.  On June 22, 1990, the Court sentenced Mr. Kessack to 30 years in prison.

At the time the sentencing was imposed, the Court was narrowly restricted in exercising its discretion by the then-mandatory Federal Sentencing Guidelines.  Without the Court's findings of drug amounts, firearm possession, and leadership, the Court would have imposed a substantially lower sentence, but in no event less than the statutory minimum 20 years.  However, the Guidelines were mandatory and the Court was required, by a

---

[1] Although Mr. Petty was also a co-leader of this conspiracy, his original 30-year sentence was reversed and Mr. Petty was ultimately sentenced to ten years based on the lower quantity of drugs "reasonably foreseeable" by him during the conspiracy.  United States v. Petty, 992 F.3d 887 (9th Cir. 1993); see also United States v. Petty, 80 F.3d 1384 (9th Cir. 1996).

[2] John Roy Brownwood, who received a sentence of 151 months, died before his appeal was decided.

[3] Mr. Kessack was subject to a statutory minimum sentence of 20 years as a result of a prior drug conviction for possession of .5 grams of phencyclidine and LSD in 1975 in state court.  This statutory minimum of 20 years is not at issue in the pending Petition.

ORDER  2–

preponderance of the evidence, to find the amount of drugs and other sentence enhancements.[4]

The mandatory Guidelines used in the 1990 sentencing of Mr. Kessack have now been declared unconstitutional because the Sixth Amendment requires juries, not judges, to find facts relevant to sentencing. United States v. Booker, 543 U.S. 220, 245 (2005). It follows that sentences imposed under an unconstitutional sentencing scheme should, in fairness, be reconsidered. Yet, due to the rules of retroactivity and the limitation on successive habeas challenges to his conviction, the Government argues that the pending Petition for a Writ of *Audita Querela* should be denied.

After his sentencing in 1990, Mr. Kessack appealed his conviction and sentence to the Ninth Circuit. Both the conviction and sentence were affirmed. United States v. Kessack, Ninth Cir. Case No. 90-30240, 983 F.2d 1078 (table) (9th Cir. 1993) (unpublished opinion). After the Ninth Circuit denied his appeal, Mr. Kessack filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"), which this Court denied. Case No. C95-459-TSZ, docket no. 1; CR89-272, docket nos. 927, 939. In 2001 and in 2005, the Ninth Circuit denied Mr. Kessack's applications for authorization to file a second or successive 28 U.S.C. § 2255 motion. Kessack v. United States, Ninth Cir. Case No. 01-70057 (Order filed Feb. 22, 2001); Kessack v. United States, Ninth Cir. Case No. 05-71909 (Order filed June 21, 2005).

Mr. Kessack now seeks to raise an objection to his sentence in the form of a Writ of *Audita Querela*, docket no. 1. Mr. Kessack argues that he is entitled to relief from the sentence imposed by this Court under a series of cases culminating in the United States

---

[4] Binding case law at the time of Mr. Kessack's sentencing upheld the then-mandatory Federal Sentencing Guidelines (and similar state sentencing guidelines) and held that sentencing factors, unlike elements of a crime, did not need to be proven to a jury beyond a reasonable doubt. See, e.g., Mistretta v. United States, 488 U.S. 361 (1989); McMillan v. Pennsylvania, 477 U.S. 79 (1986); United States v. Restrepo, 946 F.2d 654 (9th Cir. 1981).

ORDER 3–

Supreme Court's landmark decision in United States v. Booker, 543 U.S. 220 (2005). On November 1, 2006, the Court granted Mr. Kessack's request for appointment of counsel. Order, docket no. 11. The Court subsequently received briefing on the following issues: (1) the availability of the Writ of *Audita Querela* given the facts of this case; (2) whether the Writ should be considered a challenge to the conviction or sentence under 28 U.S.C. § 2255; (3) whether the Petition must be denied as a second or successive motion under 28 U.S.C. § 2255; (4) whether Petitioner is foreclosed from attempting to retroactively apply Booker to his case in light of United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005); (5) whether Petitioner has a substantive Fifth Amendment right to challenge his sentence and whether any such right would be retroactive; and (6) whether Petitioner is entitled to be re-sentenced under 18 U.S.C. § 3582(c)(2).[5]

## DISCUSSION

### Writ of *Audita Querela*

On October 31, 2005, Mr. Kessack filed his Petition for Writ of *Audita Querela* pursuant to the All Writs Act, 28 U.S.C. § 1651. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. "Audita querela, literally 'the complaint having been heard,' is a common law writ used to attack a judgment that was correct when rendered, but that later became incorrect because of circumstances that arose after the judgment was issued." Carrington v. United States, 503 F.3d 888, 890 n.2 (9th Cir. 2007).

The Court requested briefing on the question of whether the Writ of *Audita Querela* is available to Mr. Kessack given the facts of this case. The Writ of *Audita Querela* is

---

[5] The Court rejects Mr. Kessack's argument that he should be re-sentenced pursuant to 18 U.S.C. § 3582(c)(2) because "Booker did not lower sentencing ranges, nor was Booker an action 'by the Sentencing Commission.'" Carrington v. United States, 503 F.3d 888, 890-891 (9th Cir. 2007) (quoting 18 U.S.C. § 3582(c)(2)).

ORDER   4–

available in the federal criminal context to "fill 'gaps' in the current systems of postconviction relief." United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001).  In Valdez-Pacheco, the Ninth Circuit ruled that the Writ of *Audita Querela* was not available to a prisoner to avoid the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. §§ 2255 and 2254, that limit the rights of a prisoner to file a second or successive habeas motion: "A prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the postconviction remedies that must be filled by the common law writs." Valdez-Pacheco, 237 F.3d at 1080.  Because Valdez's claims were cognizable in a Section 2255 motion to vacate his conviction and sentence, the Ninth Circuit held that the Writ of *Audita Querela* was not available to him.  Id.

Valdez-Pacheco is distinguishable from the present case because Valdez's three claims raised in his Petition for Writ of *Audita Querela* could have been raised, or were raised, on direct appeal or in earlier postconviction attacks.  In Valdez's Writ of *Audita Querela*, "Valdez for the first time challenged the district court's jurisdiction to impose an enhanced sentence, based on the government's alleged failure to file the requisite information denoting the prior convictions upon which the enhanced sentence was based; [h]e also renewed his sufficiency of the evidence challenge to the drug possession convictions and his double jeopardy challenge to the conspiracy conviction, both of which were addressed in his direct appeal." Valdez-Pacheco, 237 F.3d at 1078-79 (citation and footnote omitted).  In contrast, Mr. Kessack was precluded from raising "Booker issues" at the time of sentencing, at the time of his direct appeal, and at the time he filed his Section 2255 motion, by United States Supreme Court decisions that precluded challenges to the validity of the Federal Sentencing Guidelines.  The Government argues that "the mere fact that the argument raised in Valdez-Pacheco – the United States' failure to file a sentence-enhancing information pursuant to 21 U.S.C. § 851(a)(1) – was available at the time of

ORDER   5–

1  Valdez-Pacheco's conviction and sentence while Kessack's <u>Booker</u> claim was not, does not
2  provide an adequate basis to distinguish the two cases," but the Government offers no
3  reasoning why the cases are not distinguishable on this basis.  Unlike Valdez, Mr. Kessack is
4  now serving a sentence based on mandatory Federal Sentencing Guidelines that are
5  unconstitutional.

6  The Government makes two arguments as to why the Writ of *Audita Querela* is not
7  available to Mr. Kessack.  First, the Government argues that Mr. Kessack seeks review of his
8  sentence, a claim which the Government argues is properly brought under 28 U.S.C. § 2255.
9  The Court addresses the application of 28 U.S.C. § 2255 to Mr. Kessack's Petition for Writ
10  of *Audita Querela* in the next section of this Order.  Second, the Government argues that the
11  Writ of *Audita Querela* is not available to Mr. Kessack because it is unclear whether the
12  Writ may be applied to address an alleged sentencing error, as opposed to a conviction error.
13  The Government relies on <u>Doe v. Immigration and Naturalization Service</u>, 120 F.3d 200 (9th
14  Cir. 1997).  In <u>Doe</u>, the Ninth Circuit held that "a writ of *audita querela*, if it survives at all,
15  is available only if a defendant has a legal defense or discharge to the underlying judgment,"
16  and the discussion in <u>Doe</u> is focused on the power of a court to vacate a final conviction.
17  <u>Doe</u>, 120 F.3d at 204.  The point in <u>Doe</u>, however, was to distinguish a legal claim from an
18  equitable one.  <u>See</u> <u>id.</u>  The <u>Doe</u> Court relied on a Seventh Circuit case which expressly
19  stated that "[t]he defense or discharge must be a legal defect in the conviction, ***or in the***
20  ***sentence which taints the conviction***."  <u>Doe</u>, 120 F.3d at 203 (emphasis added) (quoting
21  <u>United States v. Johnson</u>, 962 F.2d 579, 582 (7th Cir. 1992)).  The Court rejects the
22  Government's argument that the Writ of *Audita Querela* applies only to remedy an error in a
23  conviction, and not an error in a sentence.

24  As there may be no other remedy available to Mr. Kessack in this criminal case to
25  remedy a grave injustice, Mr. Kessack's Petition for Writ of *Audita Querela* should be
26

ORDER  6–

decided on the merits, unless the Court determines that Mr. Kessack's Petition should be construed as a 28 U.S.C. § 2255 motion.

### **Habeas Motions under 28 U.S.C. § 2255**

The Court requested briefing on the question of whether the Writ of *Audita Querela* should be considered a challenge to the conviction or sentence under 28 U.S.C. § 2255, and, if so, whether the Petition must be denied as a second or successive motion under 28 U.S.C. § 2255. The habeas statute applicable to federal prisoners provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the ***sentence was imposed in violation of the Constitution*** or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> * * *
>
> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain –
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255 (1996) (emphasis added).

The United States Supreme Court has clearly held that the enactment of 28 U.S.C. § 2255 does not bar federal courts from considering common law writs:

> The contention is made that § 2255 of Title 28, U.S.C., providing that a prisoner 'in custody' may at any time move the court which imposed the sentence to vacate it, if, 'in violation of the Constitution or laws of the United States,' should be construed to cover the entire field of remedies in the nature of coram nobis in federal courts. We see no compelling reason to reach that conclusion.

ORDER  7–

1  United States v. Morgan, 346 U.S. 502, 510 (1954).  In United States v. Morgan, the United
2  States Supreme Court held that "the District Court has power to grant" a motion in the nature
3  of a writ of error coram nobis.  Id. at 511.  The Court emphasized that the "[c]ontinuation of
4  litigation after final judgment and exhaustion or waiver of any statutory right of review
5  should be allowed through this extraordinary remedy only under circumstances compelling
6  such action to achieve justice."  Id.  Where there are "sound reasons existing for failure to
7  seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram
8  nobis must be heard by the federal trial court."  Id. at 512.  "Otherwise a wrong may stand
9  uncorrected which the available remedy would right."  Id.

10       Petitioner contends, in substance, that the Writ of *Audita Querela* remains available
11  because Booker is not retroactive.  The Government responds that the Ninth Circuit in
12  Carrington v. United States has "already rejected precisely this claim."  U.S. Resp., docket
13  no. 22, at 6.  However, the petitioners in Carrington did not proffer "any evidence that they
14  were uniquely impacted by the Guidelines or that there are any equities that distinguish them
15  from other defendants sentenced before Booker."  Carrington, 503 F.3d at 893.  The Ninth
16  Circuit in Carrington expressly recognized that relief could be "available in a particular case
17  upon a showing of truly extraordinary circumstances and equities."  Id.  Mr. Kessack's case
18  presents truly extraordinary circumstances, and the equities presented are unique to this
19  defendant.

20       Mr. Kessack and six other defendants were convicted of a conspiracy to distribute
21  cocaine, money laundering, and possession and distribution of cocaine.  The events that gave
22  rise to the conviction occurred during a finite period between 1984 and 1989.  The trial
23  lasted seven weeks and the evidence demonstrated the defendants were all responsible for the
24  crimes charged.  However, Mr. Kessack received a sentence substantially in excess of the
25  ultimate sentences received by other defendants.  Mr. Kessack and Mr. Robert Petty were the
26  leaders of the conspiracy and although both received 30-year sentences, as a result of

ORDER  8–

appeals, Mr. Petty's sentence was reduced to 10 years.[6] After all appeals and re-sentencing, Mr. Kessack is now subject to a sentence of at least 20 years greater than any co-defendant. This is an extreme disparity of sentence and "grossly disproportionate to the offense." Ejelonu v. Immigration and Naturalization Serv., 355 F.3d 539, 552 (6th Cir. 2004). Mr. Kessack was, under the circumstances, uniquely impacted by the Guideline calculations required to be made by the Court at sentencing. The sentence imposed by this Court was greater than necessary to accomplish the goals of sentencing. Re-sentencing is necessary to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); Kimbrough v. United States, 128 S.Ct. 558, 574 (Dec. 10, 2007) (noting that "Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities – along with other § 3553(a) factors – when imposing sentences.").

Morgan teaches "'that federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law.'" Doe, 120 F.3d at 203 (quoting United States v. Ayala, 894 F.2d 425, 428 (D.C. Cir. 1990)). Mr. Kessack relies heavily on Morgan in his opening brief. Pet'r Mem., docket no. 21, at 5, 7-8. The Government does not address United States v. Morgan. The Ninth Circuit in Carrington v. United States, 503 F.3d 888 (9th Cir. 2007), also does not address United States v. Morgan. This Court relies on United States v. Morgan to hold that Mr. Kessack's exhaustion of his statutory rights under 28 U.S.C. § 2255 does not bar his Petition for Writ of *Audita Querela*. The Court declines to construe Mr. Kessack's Petition as a Section 2255 motion. Under United States v. Morgan, the Court concludes that: (1) Mr. Kessack has sound reasons for failing to seek earlier relief under 28 U.S.C. § 2255, primarily the fact that Booker

---

[6] The Court recognizes Mr. Kessack would necessarily receive a statutory 20-year sentence because of the previous drug conviction. But any sentence above 20 years should be based on the individual case and the individual defendant before the sentencing judge, rather than on mandatory guidelines now recognized as constitutionally flawed.

ORDER   9–

announced a new rule of constitutional law in 2005, (2) truly extraordinary circumstances and equities are presented that distinguish Mr. Kessack from other defendants sentenced prior to Booker, and (3) re-sentencing Mr. Kessack under the now-advisory Federal Sentencing Guidelines is necessary to achieve fundamental justice.  Mr. Kessack was deprived of due process and a right to a jury trial when he was sentenced to 30 years in prison based upon a mandatory Guidelines sentencing system in which findings of fact made by a judge, on a preponderance of evidence standard, and not a jury, substantially increased the maximum sentence.  Because the Court does not construe Mr. Kessack's Petition as a Section 2255 motion, the Court does not transfer his Petition to the Ninth Circuit for a determination of whether the Petition should be allowed as a second or successive Section 2255 motion.

**Retroactivity of Booker**

The Court requested briefing on the question of whether Mr. Kessack is foreclosed from attempting to retroactively apply Booker to his case in light of United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005) (per curiam).  In Cruz, the Ninth Circuit "join[ed] every other circuit that has considered the question in holding that the rule announced by Booker does not meet any of the [Teague v. Lane, 489 U.S. 288 (1989)] exceptions, and thus does not operate retroactively."  Cruz, 423 F.3d at 1120.  The Ninth Circuit in Cruz held that Booker's holding is a new procedural rule, rather than a new substantive rule, and is not a watershed rule of criminal procedure because it merely changes the allocation of decisionmaking authority (i.e., juries, rather than judges, make the factual findings on which a sentence is based).  Id. at 1120-21.[7]  The United States Supreme Court had previously held

---

[7] It is difficult to imagine a ruling that more fully implicates the fundamental rights or fairness of a criminal proceeding than the Booker decision.  Yet the Court recognizes that to date no Circuit Courts of Appeals have recognized Booker as a "watershed" rule of criminal procedure.  The United States Supreme Court has "cited Gideon v. Wainwright, 372 U.S. 335 (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the [watershed rule]

ORDER   10–

that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules." Id. at 1120 (quoting Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 2523 (2004)). In Carrington, the Ninth Circuit recently stated, in dicta, that "even if petitioners had been granted permission to file second or successive habeas petitions under 28 U.S.C. § 2244(b)(3), we have held that Booker does not apply to cases on collateral review." Id. (citing United States v. Cruz, 423 F.3d at 1121).

Cruz applies the retroactivity analysis set forth in Teague to hold that Booker is not retroactive to habeas cases on collateral review, but Cruz does not address the retroactivity of Booker to cases brought before the Court on a Writ of *Audita Querela*. Teague's limitations on retroactivity stem from the nature of habeas collateral review and the "'broad scope of constitutional issues cognizable on habeas.'" Teague, 489 U.S. at 306 (quoting Mackey v. United States, 401 U.S. 667, 688-689 (1971)). In contrast to habeas petitions, a Writ of *Audita Querela* cannot be used to address a broad scope of constitutional issues; rather, a Writ of *Audita Querela* is used to achieve justice in extraordinary situations when other postconviction remedies are unavailable. Thus, the Teague retroactivity analysis followed in Cruz does not apply to Writs of *Audita Querela*, unless the Writ is construed as a Section 2255 Motion, as it was in Carrington. Accordingly, Cruz does not foreclose the retroactive application of Booker to Mr. Kessack's Writ of *Audita Querela*.[8]

**Fifth Amendment**

The Court requested briefing on the question of whether Mr. Kessack has a substantive Fifth Amendment right to challenge his sentence and whether any such right

---

exception." Saffle v. Parks, 494 U.S. 484, 495 (1990).

[8] Outside the context of collateral review cases, "new" constitutional rules have generally been applied retroactively to cases on direct review. See Griffith v. Kentucky, 479 U.S. 314, 322-23 (1987).

ORDER  11–

1 would be retroactive. In light of the Court's ruling, the Court does not need to address the
2 retroactivity of Booker under the Fifth Amendment.

## CONCLUSION

The Writ of *Audita Querela* is available to Mr. Kessack because Booker announced a new rule of constitutional law that was unforeseeable at the time of his sentencing, appeal, and habeas petitions, thus distinguishing his case from Valdez-Pacheco. The Court declines to construe Mr. Kessack's Writ of *Audita Querela* as a 28 U.S.C. § 2255 motion in light of United States v. Morgan, and, therefore, the ban on second or successive habeas motions does not apply to Mr. Kessack. The Ninth Circuit's holding regarding retroactivity in Cruz does not apply to Mr. Kessack's Writ of *Audita Querela* because Cruz and Teague only apply to habeas cases on collateral review. The Court does not address the retroactivity of Booker under the Fifth Amendment. The Court declines to hold that Mr. Kessack is entitled to be re-sentenced under 18 U.S.C. § 3582(c)(2).

As recently recognized by the United States Supreme Court, "the sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." See Gall v. United States,128 S.Ct. 586, 597-598 (Dec. 10, 2007), and Kimbrough v. United States, 128 S.Ct. 558, 574 (Dec. 10, 2007) (quoting Rita v. United States, 127 S.Ct. 2456, 2469 (June 21, 2007)). Despite the passage of eighteen years since the trial and sentencing of Mr. Kessack, this sentencing judge vividly remembers the facts and circumstances of the case and believes that a grave injustice is occurring as a result of Mr. Kessack's 30-year sentence, which was imposed pursuant to the then-mandatory Federal Sentencing Guidelines now declared unconstitutional. The Court GRANTS Donald Craig Kessack's Petition for Writ of *Audita Querela*, docket no. 1, and ORDERS that Mr. Kessack be re-sentenced on **March 3, 2008, at 1:30 p.m**.

IT IS SO ORDERED.

DATED this 18th day of January, 2008.

_____
Thomas S. Zilly
United States District Judge

ORDER  13–